108 So.2d 641 (1959)
Veria Mae GAYMON, Administratrix of the Estate of Robert S. Gaymon, Deceased, Appellant,
v.
QUINN MENHADEN FISHERIES OF TEXAS, INC., Appellee.
No. A-24.
District Court of Appeal of Florida. First District.
February 3, 1959.
*642 George T. Delves, Jacksonville, for appellant.
John G. Hodges, Tampa and Edward H. Robinson, Jacksonville, for appellee.
CARROLL, DONALD K., Judge.
This is an appeal from a summary judgment entered by the Circuit Court for Nassau County in favor of the defendant in an action under the Jones Act (46 U.S.C. § 688) brought by the appellant, the administratrix of the estate of a deceased seaman, against his employer. The only question before us is whether there was a genuine issue of material facts before the court when the summary judgment was entered in order to justify such entry.
The record shows: The seaman was employed by the appellee-defendant as a crewman on one of its fishing boats. On Saturday afternoon, April 30, 1955, this boat docked at the defendant's plant at Port Arthur, Texas. Each of the crewmen on the boat was given a ten dollar advance and relieved of duty until the next Monday morning. The deceased was seen in town by some of the other members of the crew between midnight and 1:00 A.M. He returned to the boat between 6:30 and 7:30 A.M., Sunday, May 1st, and did not appear to be intoxicated. He talked with the cook, who gave him the keys to the galley so he could get something to eat, at which time the deceased was fully clothed. The deceased returned the keys and was never again seen alive. On Tuesday, May 3, 1955, the deceased, wearing only an undershirt, was discovered in the water about a half mile from where the boat was moored. The shirt and trousers he was wearing when he was seen by the cook were found on his bunk in the forecastle of the boat, where he was bunking with about ten other crewmen.
The evidence further showed that the area around the boat was unlighted and dark; that there was no watch posted that night; that the crewmen had to board the boat over the side, over a short rail, because the boat was not equipped with a gangplank; that there was a space between this boat and a sister ship moored alongside, which space was large enough for a man to fall through; that the boat was not equipped with toilet *643 facilities, so the crew, in deference to nature, had to go over the side.
The evidence summarized in the preceding paragraph seems sufficient to show negligence on the part of the employer, but the evidence wholly fails to show that such negligence had anything to do with the seaman's death. Even his manner of death is unexplained. A court, of course, may not speculate as to how the death occurred.
In her brief the appellant cites numerous federal and state decisions to the effect that the Jones Act, like workmen's compensation laws, should be liberally construed in aid of its beneficent purpose to give protection to seamen and to those dependent upon their earnings, and we agree with this rule. See, for instance, Cortes v. Baltimore Insular Line, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368. But we are referred to no case, and independent research has revealed none, in which a court has dispensed with the necessity for a plaintiff to prove that the employer's negligence proximately caused the accident resulting in the seaman's injury or death. Such a requirement is fundamental in the administration of justice in our system. The doctrine of "res ipsa loquitur" may not be applied to the circumstances of this case.
Our conclusion therefore is that the Circuit Court was correct in holding that there was no genuine issue as to a material fact based upon the evidence before the court at the hearing on the motion for summary judgment.
But this conclusion concerning the absence of evidence on the plaintiff's part serves to emphasize the decisive importance of another of the court's rulings denying the plaintiff's motion for extension of time, which ruling is the subject of another assignment of error, as hereinafter set forth.
The defendant's motion for summary judgment was filed on May 31, 1957. Attached to the motion were several affidavits by officers and crew members employed by the defendant, whose statements seek to negative the statements of ultimate fact alleged in the complaint.
Upon receiving this motion and attached affidavits the plaintiff's counsel immediately traveled to the State of Maryland, where he procured affidavits of two crew members. The statements contained in these affidavits seek to support the statements of ultimate fact alleged in the complaint. While on this mission, the plaintiff's counsel attended the taking of depositions of two crew members noticed by the defendant.
Within a few days after procuring affidavits and taking the depositions above mentioned, the court set defendant's motion for summary judgment for hearing on June 12, 1957. On this date counsel for both parties appeared before the court and presented their argument in support of and in opposition to the motion for summary judgment. At the conclusion of the oral presentation the plaintiff's counsel filed with the court a written motion pursuant to Rule 1.36(f) of the Florida Rules of Civil Procedure, 30 F.S.A. By this motion the plaintiff's counsel moved the court for additional time in which to obtain affidavits and take depositions in opposition to defendant's motion for summary judgment. This motion was supported by an affidavit signed by the plaintiff's counsel in which he stated that he had made a preliminary investigation as to the cause of the death of the seaman on whose behalf the suit was brought; that such investigation included the interrogation of several crew members of the ship on which the seaman was working at the time of his death; that from this investigation counsel was convinced that a number of the crew members had knowledge of the facts alleged in the complaint who had not been questioned but who lived at great distances from the jurisdiction of the court in which the suit was pending, to wit: the States of Texas and Maryland; that because of such distances the plaintiff's counsel had been unable to obtain affidavits or depositions in time for the hearing on defendant's motion for summary judgment; that some of the witnesses *644 interrogated by counsel had revealed circumstances indicating the manner in which the deceased met his death while in the course of his employment. From this affidavit it is apparent that under the peculiar circumstances of this case the witnesses who might support the cause of action sued upon were scattered in remote sections of the country and time would be required in order to make their testimony available to the court in any final disposition of the cause.
In the summary judgment from which this appeal is taken, the court stated that it was of the opinion that the affidavit of counsel above-mentioned stated no facts or reason which would warrant continuance of the action for the further taking of depositions or procurements of affidavits in opposition to the motion for summary judgment.
Rule 1.36, Florida Rules of Civil Procedure, provides for the entry of summary judgment or decree in proper cases. Subparagraph (f) provides:
"When Affidavits Are Unavailable. Should it appear from the affidavits of a party opposing the motion [for summary judgment] that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or decree or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other orders as is just." In commenting upon the true auspice for a motion for summary judgment, our Supreme Court in National Airlines, Inc., v. Florida Equipment Co. of Miami, Fla., 71 So.2d 741, 744, said: "Of course, a litigant by merely asserting a fact, without any evidence to support it, cannot avoid a summary disposition of his case. Before this phase of the rule comes into play, the record must show that all evidence which may support that litigant's contentions must be before the Court."
The rule authorizing the summary final disposition of cases by judgment or decree does not contemplate that the motion will be granted in those cases where because of peculiar circumstances a party is unable on short notice to interrogate witnesses and procure affidavits or depositions in opposition to the motion asserted by his opponent. Public policy requires that our courts be ever vigilant in making summary disposition of causes lest the application of the rule result in eroding or destroying the fundamental right of litigants under our system of jurisprudence to have the issues made by the pleadings tried by a jury of fellow citizens. The importance of preserving the jury system, and the concomitant right of a litigant to a jury trial on the merits of his cause, should be zealously protected.
From the affidavit signed by the plaintiff's counsel in this case it cannot be questioned that "all evidence which may support that litigant's contention" was not before the court at the hearing on the defendant's motion for summary judgment. The reason why all such evidence was not then available for presentation to the court at the hearing is amply clear. The proper procedure in this case would have been for the trial court either to have postponed final disposition of the motion for such reasonable time as may have been necessary for the plaintiff's counsel to interrogate the other members of the crew and procure from them such affidavits as he could, or to deny the motion and promptly set the cause for trial on the merits. In either event the plaintiff would have been afforded her opportunity properly to defend against the motion for summary judgment or to fully present her evidence before a jury on a trial of the issues.
The question here involved is more than a mere technicality. It strikes at the very heart of our system of jurisprudence, and preserves to the litigant the right to have the issues of the case determined on their merits in a proper trial of the cause as contemplated by the fundamental law of this state.
*645 For the foregoing reasons we are of the opinion that the trial court abused its discretion and thereby committed error in denying plaintiff's motion for an extension of time within which to take depositions or procure affidavits in opposition to the motion for summary judgment. We, therefore, reverse the judgment and remand this cause for further proceedings consistent with the views herein expressed.
Reversed.
WIGGINTON, J., concurs.
STURGIS, C.J., dissenting.
STURGIS, Chief Judge (dissenting).
Stripped of verbage, the majority decision holds that the trial judge abused his discretion in denying plaintiff's motion for additional time in which to submit additional evidence in opposition to defendant's motion for summary judgment. The scheduled hearing on defendant's motion for summary judgment, of which plaintiff had due notice, had finally adjourned several hours prior to the filing or notice of intention to file the subject motion for additional time. Plaintiff's motion is available, if at all, under rule 1.36(f), Florida Rules of Civil Procedure, which provides:
"Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or decree or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."
By way of obiter dicta, the majority decision holds, and I agree, that on the available evidence the summary judgment for defendant was in order. The issue on appeal is thus restricted to the question as to whether there was an actual abuse of judicial discretion, to determine which it is first necessary to clearly detail and understand the order of events.
The cause of action accrued on April 30, 1955, the date of death of plaintiff's husband. While the record on appeal does not indicate the date the original complaint was filed, it contains a stipulation filed October 31, 1956, upon the subject of the court's jurisdiction, from which it is apparent that the original complaint was filed near or prior to September 1, 1956. On January 29, 1957, motion to dismiss the complaint on jurisdictional grounds was denied. The remaining dates relate to the year 1957. On February 1 plaintiff filed an amended complaint, to which defendant addressed a motion to dismiss and a motion to strike. On March 21 an order permitted plaintiff to amend the complaint by interlineation and denied the last mentioned motions. Answer was filed on April 6, and on April 17 interrogatories were addressed to the plaintiff, to which plaintiff filed objections on May 1. It does not appear that the objections were heard or that the interrogatories were answered, but this becomes moot in view of the subsequent action. On April 27 plaintiff called on defendant for admissions or denials of certain matters and on May 9 defendant's responses, thereto were filed. On May 15 plaintiff moved to strike part of the responses, but it does not appear that this motion was formally disposed of, which also becomes moot under the circumstances.
On May 31, 1957, defendant filed motion for summary judgment accompanied by its proofs in support thereof. On the same date defendant filed motion to strike certain portions of the amended complaint, which motion does not appear to have been formally disposed of; but this is moot because of the subsequent developments.
After some preliminary skirmishing between the parties on the question of the time for a hearing on all undisposed of pleadings, and after defendant's attorney had on May 30 duly noticed plaintiff of a scheduled hearing before the court at the hour of 10:00 a.m. on Wednesday, June 12, for the purpose of disposing of all undisposed of matters, a hearing was held and *646 on June 7 an order entered fixing the time last stated for a hearing
"* * * on all undisposed of pleadings in this case, including plaintiff's objections to interrogatories propounded by the defendant, plaintiff's motion to strike specific answers to plaintiff's request for admissions, and defendant's motion to strike sham pleadings and motion for summary judgment. * * *"
The hearing was held as so ordered. The record is devoid of any indication that the plaintiff prior to or during the hearing expressed any inconvenience, embarrassment, or invasion of rights whatsoever in proceeding at the time scheduled to the disposition of the matters specified by the order. The inference is inescapable that it was altogether agreeable to plaintiff to so proceed, and this is fortified by the fact that plaintiff there presented voluminous proofs in opposition to the motion for summary judgment without registering any wish to defer the court's disposition for any reason whatever.
As recited in the order appealed from, it was several hours after the hearing had been concluded on the plane mentioned that the plaintiff filed the motion in question seeking additional time to procure and present additional evidence in opposition to the motion for summary judgment. The attempted justification for plaintiff's motion is contained in the affidavit of her attorney of record, showing:
"That Affiant is attorney for Verla Mae Gaymon, Administratrix of the Estate of Robert S. Gaymon, deceased, who is the plaintiff in case #964 pending in the Circuit Court in and for Nassau County, Florida. That Affiant has made preliminary investigation as to the cause of the death of Robert S. Gaymon, deceased, having questioned several members of the crew of the `E. Alfred Davies, Jr.' at Port Arthur, Texas, who knew the deceased, and also having questioned several members of the crew in Maryland, that there are certain members of the crew who have not been questioned as yet but who were present at the time the decedent was last seen on board the vessel prior to his death and who have knowledge of the circumstances surrounding his death; that these crewmen are located great distances from Jacksonville, Florida, to-wit: the States of Texas and Maryland; that because of the said distance involved Affiant has been unable to obtain affidavits or depositions in time for this hearing; that some of these crew members previously questioned did not know the manner in which Robert S. Gaymon drowned but revealed that the circumstances indicated that he slipped while stepping from one vessel to the other in the early morning of May 1, 1955, and fell by some unknown manner from the vessel; that other witnesses revealed that the circumstances indicated that the said Robert S. Gaymon fell from the vessel while answering the call of nature over the side of the vessel, in that all of the members of the crew, made a customary practice of this because there was no toilet facilities on the vessel available for their use. The depositions show thus far that the deceased was last seen aboard the vessel and that a number of the crewmen on the vessel have not thus far been questioned or given depositions; that after decedent's death he was found floating in the canal in which the vessel was moored unclothed except for his undershirt. There were a number of crewman aboard the vessel when decedent was last seen aboard it and inasmuch as the clothes which he was wearing when last seen were found in his quarters aboard the ship, it is logically concluded that the crewmen then aboard are informed of the circumstances surrounding his death."
*647 Action was deferred pending a further hearing and on June 15 the order on appeal was entered whereby plaintiff's motion was denied and summary judgment entered for the defendant.
One would be extremely naive not to recognize that the untimely motion for extension was action in extremis. Its timing negatives any doubt of plaintiff's willingness to go to hearing on the proofs available and at the time scheduled. The conclusion is inescapable that plaintiff's motion was inspired by the reaction of her attorney, gleaned from the hearing, that summary judgment for defendant was in the offing. Admiration for his energy and ingenuity does not call for the accomplishment of his purpose, here or at the trial level.
More than two years had elapsed from the date the cause of action accrued to the date of the hearing and not less than nine months had elapsed after suit was filed. Under such circumstances it is difficult, and to the writer impossible, to find any merit whatever in the major premise upon which the motion is based, namely, that no reasonable opportunity existed prior to the hearing to ferret out those persons, if any exist, who might have knowledge of material facts supporting her claim; and, inferentially, that such was not known prior to the hearing or, if known, that plaintiff was under no compulsion to disclose the facts to the court by filing the motion in advance thereof, that she was entitled to lay out in the weeds until the hot winds of adversity were breathing down her back. If the period available to plaintiff in this cause was not sufficient, then, pray, what period would be?
The decision of the majority has a far reaching effect upon modern pleading and practice. It must be assumed that plaintiff, as was her duty, produced all known testimony in opposition to defendant's motion for summary judgment. It logically follows that in order to overthrow the discretion exercised by the trial judge on plaintiff's motion for additional time to present the nebulous additional testimony referred to in the motion, it must also be assumed, as a matter of law, that a litigant has the right to institute and maintain a legal proceeding on the totally speculative premise that after it is commenced he will engage on a proof-hunting expedition that may result in the nugget of a witness  of whom he knows nothing at the time  having knowledge of some material fact that will support the action. With this I do not agree. Remember that the majority has held that on the proofs presented a summary decree for defendant was proper. Remember, also, that any attorney can draft a complaint that will meet the test of legal sufficiency, but that the proof of the pudding is in the having of evidence to support the claim.
The following comment on Rule 1.36(f), F.R.C.P., is found in Volume 30 F.S.A. at page 740:
"To be entitled to protection, the party must show by affidavit good grounds why he has been unable to present his proof; the affidavit should show what the proof is and what steps have been taken to obtain it." (Emphasis supplied.)
The affidavit in this case utterly fails to meet that test. Part of it is nothing more that the affiant's interpretation of evidence theretofore presented by plaintiff in opposition to defendant's motion for summary judgment. Part of it is irrelevant and meaningless when considered in relation to the time that elapsed between the date the cause of action accrued and the date of the hearing. The inference that the unavailable testimony  whatever it may be and whomsoever might give it  was not available at the hearing because of the great distance from Jacksonville, Florida, to Texas or to Maryland, totally ignores the time required to traverse that distance with modern means of transportation. The remainder of the affidavit is altogether speculative in character. It simply says, in *648 substance, that plaintiff needs more time to go fishing.
The summary judgment procedure is an integral part of the judicial system. It affords a valuable aid in securing the "just, speedy and inexpensive termination of every action" as declared by Rule A, F.R.C.P., to be the guiding principle in construing the new rules. A litigant entitled to summary judgment in his behalf enjoys a right no less important than many others secured by law. The decisions have amply safeguarded the right to trial by jury when there is a material issue of fact to be determined and the writer respects and will jealously preserve it. However, the constitutional right of trial by jury is no more important than the constitutional guaranty that justice shall be "administered without sale, denial or delay." Sec. 4, Dec. of Rights, Const. of Fla., F.S.A.
Where, as in this state, unlike many others, there is no statutory provision or rule of law requiring plaintiffs to indemnify defendants against unfounded actions, the duty of the court to guard against such actions is increasingly important. All too often damage suits are instituted and prosecuted somewhat in the nature of a coin matching contest in which tails wins for the plaintiff and heads loses for the defendant. Not impugning the bona fides of the plaintiff or her attorney in this cause, the fact remains that the discretion exercised by the trial judge in this instance is the very type that must be exercised in the over-all supervision of trial procedures.
The right to enjoy the processes of the courts for redress of wrong carries with it definite responsibilities as well. First among these is that there should be a bona fide claim of right, founded in law, and supportable by available evidence. The alert attorney should, of course, explore the available evidence and all leads that point to additional evidence supporting his client's claim, but neither he nor the client can escape the consequences of a complete lack of evidence on which to found the action. The case on review is a good example of one in which the simple matter of discovering whether there exists a possible witness who possibly knows something about the facts requires no special talent enjoyed by an attorney as distinguished from that of any other person with average intelligence.
The majority holds, in effect, that the test of the sufficiency of a motion invoking Rule 1.36(f), F.R.C.P. is whether it shows that the court does not have before it "all evidence which may support that litigant's contention." It is suggested that a better test would be whether it shows: First, that the litigant knows or has good reason to believe that there is a witness having knowledge of material facts, noncumulative to those already in hand or available, stating the name and address of such witness and the substance of the facts to which it is expected he will testify; and where stated on information and belief, the facts upon which the same is based; second, that failure to have such testimony available is not occasioned by lack of diligence on movant's part; and third, that the missing evidence will be made available within a reasonable time. The motion in suit lacks every factor of this test.
It is elemental that failure to take timely action implies waiver or works an estoppel. Cf. Ganaway v. Henderson, Fla. App., 103 So.2d 693. The obvious deficiencies of the motion in question are multiplied by the failure of the pleader to make any attempt whatever to show cause for its untimely presentation. In my opinion plaintiff trifles with the time and processes of the court in attempting, under the circumstances of this appeal, to shoot a second barrel.
For the reasons stated I respectfully dissent.